IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

LAZ KARP ASSOCIATES, LLC,

    *Plaintiff,*

v.

ANILISE STARRE,

    *Defendant.*

Civil Action No. _____

## COMPLAINT

Plaintiff, LAZ KARP Associates, LLC ("Plaintiff", "LAZ", or the "Company") for its Complaint for a Preliminary Injunction against Defendant Anilise Starre ("Defendant" or "Starre") states as follows:

## NATURE OF THE CASE

1. This is an action by LAZ against its former employee, Anilise Starre ("Starre"), for misappropriating LAZ's trade secrets and breaching her Confidentiality and Non-Solicitation Agreement (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit A. In the last month of her employment with LAZ, and for several hours following her termination on November 4, 2025, Starre secretly sent over 90 emails from her work account to her personal email account (the "Misappropriated Emails"), many of which contain LAZ's proprietary, confidential and trade secret information (collectively the "Proprietary Information"). She also remains in possession of a Company cell phone that is likely to contain additional Proprietary Information.

2. Upon learning this, LAZ immediately sent a letter to Starre on November 5, 2025, demanding the return of the Misappropriated Emails and all Company property. A true and correct

copy of LAZ's November 5, 2025 letter to Starre is attached as Exhibit B. Receiving no response from Starre, LAZ sent a second letter to Starre on November 7, 2025 (via email and FedEx) regarding the Misappropriated Emails and all Company property. A true and correct copy of LAZ's November 7, 2025 letter to Starre is attached as Exhibit C. LAZ also left voicemails for Starre on her personal cell phone on November 5 and 6, asking for a returned call. LAZ then texted Starre's personal cell phone on November 6, again trying to reach her. Having still received no response, the undersigned law firm sent another letter to Starre on November 14, 2025, before commencing this action. A true and correct copy of the November 14, 2025 Letter to Starre is attached as Exhibit D. Starre has not responded to any of these communications.

3. Because disclosure of LAZ's Proprietary Information would cause the Company immeasurable and irreparable harm (as further explained below), and because Starre is ignoring LAZ's attempts to retrieve and protect its Proprietary Information and property, LAZ asks this Court for expedited equitable relief.

**PARTIES**

4. LAZ is a limited liability company organized and existing under the laws of the State of Connecticut. LAZ's principal place of business is in Hartford, Connecticut, and LAZ has locations throughout North America, including in the greater Washington D.C. area.

5. Starre is an individual and a citizen of Virginia who, upon information and belief, currently resides at 5911 Edsall Road, Apt. 507, Alexandria, VA 22304. She also maintains a P.O. Box in this judicial district, with an address of P.O. Box 4126, Alexandria, VA 22303.

**JURISDICTION AND VENUE**

6. Subject matter jurisdiction is conferred pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States." Specifically, LAZ alleges that Starre violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq.*, by intentionally misappropriating LAZ's trade secrets. The remaining claims are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4) because they arise from the same nucleus of operative facts as the claim under the DTSA.

7. Personal jurisdiction is conferred over Starre pursuant to Va. Code Ann. § 8.01-330 because she is a Virginia resident.

8. This Court is the appropriate venue to maintain this action pursuant to 28 U.S.C. 1391(b)(1) and (2), because Starre resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

### A. LAZ Provides Parking Services.

9. Founded in 1981, LAZ is a parking services provider that operates parking facilities for clients throughout North America. Since then, LAZ has become a leader in the industry, driven by providing efficient and professional service.

10. LAZ serves its clients, many of which are municipalities, airports, residential buildings, office buildings, universities, and other venues, in need of parking services.

11. Today, LAZ operates the largest and most relied-upon parking system in North America, with over 5,300 locations facilitating ease and convenience for millions of consumers every day.

### B. LAZ's Proprietary Information.

12. LAZ maintains a substantial amount of information accrued through decades of experience in the industry, countless hours of skilled labor, and significant investments of capital.

Of particular importance to LAZ are its internal financial documents, including balance sheets, lists of operational costs for specific client services, and price scaling data, as LAZ relies on this information for budgeting, determining employee wages, and for setting competitive pricing for clients.

13. LAZ's Proprietary Information includes, but is not limited to, budget spreadsheets, which show itemized revenues, expenses, and other information, including comparisons of actual amounts versus budgeted amounts for specific locations and regions; profitability metrics by location; employee wages; customer-specific information (*i.e.*, lease documents, revenue distribution reports, and expenses); and business commentary and strategic business plans. This information not only contains highly confidential data concerning the Company's finances, but it also reflects the Company's strategy and initiatives for cost-management, employee retention, price scaling, and client relationships.

14. Because of the competitiveness of the parking services industry, this Proprietary Information is among LAZ's most valuable assets, and LAZ derives substantial value from maintaining the secrecy of this Proprietary Information. The risk of harm to LAZ if this information is improperly disclosed to or used by a competitor is immeasurable. At the very least, disclosing LAZ's Proprietary Information to a competing parking service provider, or to put LAZ's Proprietary Information into the public domain, would deprive LAZ of its competitive advantage when bidding against a provider in the marketplace, and it would undermine LAZ's ability to negotiate contract terms and pricing with current and prospective customers.

C. **LAZ Protects Its Proprietary Information.**

15. LAZ grants access to its Proprietary Information on a need-to-know basis and maintains multiple layers of protection to ensure it remains confidential. LAZ uses a combination

and agreements, written policies, education and training, and physical and electronic security measures to protect its Proprietary Information.

### i. Confidentiality Agreement.

16. As a condition of employment, LAZ requires all accounting and finance employees to execute an agreement that defines their obligations regarding the Company's Proprietary Information. As relevant here, the Agreement defines "Proprietary Information" to include "customer records; trade secrets; business plans; methods of operation; marketing; pricing, and financial information pertaining to the business of the Company…" (Ex. A – Agreement at §1(a)).

17. The Agreement requires employees to safeguard the confidentiality of the Proprietary Information (including preventing its unauthorized use or disclosure) (*id.* at §1) and further establishes that Proprietary Information is "the sole and exclusive property of the Company and shall remain such after the termination of [the employee's] employment…". (*Id.* at §2).

18. The Agreement provides that "in the event of a breach or threat of breach of this Agreement, monetary compensation would not be an adequate remedy…" and adds that, "in the event o[f] a breach on [the employee's] part, or threat of a breach . . . the Company shall be entitled to an immediate injunction or temporary restraining order without showing actual damages." (*Id.* at 8(a)).

### ii. Employee Handbook & Code of Conduct.

19. LAZ also requires new employees to acknowledge that they have received, read, and will follow both the Employee Handbook and Code of Conduct, each of which contains policies about Proprietary Information. True and correct copies of LAZ's Employee Handbook and Code of Conduct—each of which contain a signed acknowledgement by Starre—are attached hereto as Exhibits E and F, respectively.

20. The Employee Handbook specifically identifies "cost figures" and "income and expense documents" as examples of Company trade secrets, adding that "these are examples of materials that every LAZ employee should safeguard carefully during employment with LAZ and leave behind as LAZ property in the event the employee goes elsewhere." (Ex. E – Employee Handbook, at p. 26). If a departing employee fails to return Company property, the Employee Handbook warns that "the [C]ompany may . . . seek the return of Company property through appropriate legal recourse." (*Id.* at p. 25).

21. The Code of Conduct is even more explicit in directing employees to protect Proprietary Information. It states: "Confidential data should never be transmitted to private unsecured sources under any circumstances (*e.g.*, USB drives, ***personal email accounts***)." (Ex. F – Code of Conduct, at p. 8) (emphasis added).

   iii. **Password Protection.**

22. LAZ also utilizes password protection to preserve the confidentiality of its Proprietary Information. Not only does LAZ utilize typical password protections, such as requiring employees to log in with unique credentials to access a Company device, it also uses permission-restricted folders, which only permit authorized LAZ employees to access certain information.

23. When emailing particularly sensitive documents within the Company, LAZ additionally requires the use of a password (which is transmitted through a different medium, such as by text message) to open the attachments.

D. **Starre Begins Employment as a Regional Controller at LAZ in March 2022.**

24. On March 7, 2022, Starre began employment with LAZ as a Regional Controller over LAZ's Central East Coast Region, which included Pennsylvania, Baltimore, Virginia, and Washington DC (the "Region"). She worked primarily in LAZ's Washington D.C. office.

25. Starre's access to Proprietary Information, like everyone else's in the Company, was limited to the information needed to perform her individual duties. As a Regional Controller, Starre was responsible for oversight of all accounting activity within the Region, including overseeing development of the Region's financial plan, solving operational and financial challenges with operational teams, performing financial analyses as requested by regional leadership, maintaining budgets for LAZ's locations within the Region, and serving as a liaison between the Region's operations team and the home office in Connecticut for financial matters. Attached as Exhibit G is a true and correct copy of Starre's Regional Controller Job Description.

26. Starre certified that she was aware that her role required access to substantial Proprietary Information, and she knew that maintaining the confidentiality of such information was paramount to her role.

27. For example, on March 12, 2022, Starre signed the Agreement, which set forth the obligations outlined in Section C(i) above. (Ex. A). She also received the Code of Conduct and Employee Handbook, and signed acknowledgments of each on March 14, 2022, and March 17, 2022, respectively. (Exs. E-F).

E. **Starre's Performance Issues & Termination.**

28. LAZ's Senior Director of Regional Finance, Carolyn Maloney, began supervising Starre in or around July 2024. While Maloney immediately noticed issues with Starre's performance (including providing inaccurate and incomplete deliverables), she attempted to coach Starre on an informal basis to help Starre improve.

29. Others expressed concerns about Starre's performance to Maloney. For example, Maloney received complaints that Starre frequently submitted delayed responses to requests and

7

emails and that members of the regional team did not trust Starre to accurately or timely complete assigned tasks.

30. In or around October 2025, at the recommendation of the Region's Vice President and Senior Vice President, Maloney created a performance improvement plan ("PIP") to address the areas where Starre was struggling. The PIP was to last for 7 weeks, and included weekly milestones, with check-ins with Maloney.

31. On October 7, 2025, Maloney sent Starre a Microsoft Teams invitation for a call that was to take place on October 9, 2025, where the PIP would be presented. Unbeknownst to Maloney or others within leadership of LAZ, Starre began sending Company emails to her personal Gmail account on October 8, 2025 (as further addressed below).

32. Starre's performance did not sufficiently improve after the PIP was instituted. Nor did Starre express or exhibit a desire to improve to Maloney. During a call she had with Starre on November 3, 2025, Maloney observed that Starre was not willing to put forward the effort necessary to complete her seven-week PIP. As a result of Maloney's observation and Starre's poor performance, LAZ decided to terminate Starre's employment with the Company.

33. At or around 9:30 a.m. on November 4, 2025, Maloney informed Starre that her employment was being terminated, effective immediately. The call ended at approximately 10:00 a.m., and Starre turned in her Company laptop and left the office shortly thereafter. However, she retained her Company cell phone and, unbeknownst to LAZ, proceeded to use it to send 35 Company emails to her personal Gmail account before her access was deactivated.

34. LAZ did not discover this until the next day (November 5, 2025), when Maloney accessed Starre's Company email account to determine what outstanding requests Maloney may need to reassign to other Regional Controllers. When she logged in, Maloney observed that Starre

had approximately 3,000 unread emails. She also noticed that Starre used her LAZ email account to forward *over 90 emails* to her personal Gmail account.

### F. Starre Misappropriated Proprietary Information to by Sending Over 90 Company Emails to Her Personal Gmail Account.

35.     On October 8, 2025, Starre used her LAZ email account to forward *7 Company emails* to her personal Gmail account.

36.     On October 10, 2025, Starre used her LAZ email account to forward *another 31 Company emails* to her personal Gmail account. Included in this batch was LAZ's Home Office Cost Allocation ("HOCA") File. A true and correct copy of the email transmitting the HOCA File is attached as Exhibit H; however, the Proprietary Information in this email has been redacted, and the HOCA File itself has been removed, to maintain confidentiality until a protective order is entered or this Court directs that the HOCA File be filed under seal.

37.     The HOCA File is one of the most valuable pieces of Proprietary Information LAZ possesses, as it contains a list of over 50 services LAZ provides customers from its Connecticut-based headquarters (*i.e.*, the home office) and the baseline operational cost LAZ incurs for each such service for both 2025 and 2026. (*Id.*).

38.     For example, one of the 50+ services in the HOCA File is the option of having a LAZ Customer Care Center employee available to answer questions from individuals entering or exiting a parking garage. There is a base operational cost LAZ incurs for each call (which is based on factors such as technology costs, wages for call center employees based on call volume, and installation of appropriate devices in the garage to transmit such calls), which in turn LAZ uses to determine its pricing to clients.

39.     The HOCA file also includes proprietary cost information for the other 50+ services, including LAZ BI (which collects parking, demographic, sales and weather data and

transforms it into actionable business insights), LAZgo (a mobile parking payment solution), and insurance coverage options for clients utilizing shuttle services. (*Id.*).

40. The HOCA File is so sensitive that Meghan Reed (VP of Corporate Finance) password protected the file and noted: "I will circulate the password separately. As always, please consider these as highly sensitive…" Maloney, who forwarded the document to Starre and other regional controllers on July 9, 2025, also instructed "This is not to be shared outside of our group." (*Id.*).

41. Between October 14, 2025 and November 3, 2025, Starre used her LAZ email account to forward *another 21 Company emails* to her personal Gmail account. Included in these emails were screenshots of the 2026 budget for LAZ's Pennsylvania and Delaware operations, including amounts allocated to payroll, health insurance, workers' compensation, and shuttle insurance. A true and correct copy of the email transmitting this Proprietary Information as Exhibit I; however, the Proprietary Information in this email has been redacted to maintain confidentiality until a protective order is entered, or this Court directs an unredacted copy to be filed under seal.

42. *After her termination* on November 4, 2025, but before her access to LAZ's email system had been turned off, Starre used her LAZ email account to forward *another 35 Company emails* to her personal Gmail account. Starre began sending this batch of emails immediately after the call communicating her termination had ended (*i.e.*, at approximately 10:00 a.m.), and it ended only when LAZ had turned off access to Starre's Company cell phone (*i.e.*, at approximately 1:30 p.m.). Included in this batch were:

   a. Various customer-specific documents, including one lease agreement, multiple rent calculation spreadsheets, and other itemized financial information for multiple Washington D.C.-based clients. True and correct copies of the emails transmitting this Proprietary

Information are attached as Exhibits J-K; however, the Proprietary Information in these emails has been redacted, and the proprietary attachments have been removed, to maintain confidentiality until a protective order is entered or this Court directs a complete copy to be filed under seal.

        b.      An email chain listing regional financial results, budget comparisons, and lists of new and prospective clients with estimated revenues for each, with an attachment containing comprehensive financial information LAZ's Mid-Atlantic Region. A true and correct copy of the email transmitting this Proprietary Information is attached as Exhibit L; however, the Proprietary Information in this email has been redacted, and the proprietary attachment has been removed, to maintain confidentiality until a protective order is entered, or this Court directs an unredacted and complete copy to be filed under seal.

        c.      Revenue figures and rosters of parking customers (and LAZ's margins for each) for a large Baltimore-based client. A true and correct copy of the email transmitting the Proprietary Information is attached as Exhibit M; however, the Proprietary Information in this email has been redacted, and the proprietary attachments have been removed, to maintain confidentiality until a protective order is entered or this Court directs a complete copy to be filed under seal.

        d.      Thousands of pages worth of data in multiple spreadsheets, each of which contain comprehensive financial information (profit, loss, actual revenue vs. budget) for each division of LAZ's business in the Mid-Atlantic Region. True and correct copies of the emails transmitting this Proprietary Information are attached as Exhibits N-O; however, the Proprietary Information in these emails has been redacted, and the proprietary attachments have been removed, to maintain confidentiality until a protective order is entered or this Court directs a complete copy to be filed under seal.

### G. Starre Fails to Respond to LAZ's Communications.

43. On November 5, 2025, LAZ sent a letter to Starre, demanding the return of the Misappropriated Emails and all Company property. (Ex. B). Starre did not respond.

44. LAZ sent Starre a second letter on November 7, 2025, again demanding the return of the Misappropriated Emails and all Company property. (Ex. C). Starre did not respond.

45. LAZ also left voicemails for Starre on her personal cell phone on November 5 and 6, asking for a returned call. Starre did not respond. LAZ then texted Starre's personal cell phone on November 6, again trying to reach her. Again, Starre did not respond.

46. On November 14, 2025, undersigned counsel sent a third letter to Starre, reiterating her obligations to return LAZ's Proprietary Information and property, or risk legal action. (Ex. D). Starre did not respond.

47. Starre has exhibited no inclination to honor her confidentiality obligations to the Company. If left unaddressed, Starre's possession and possible use of LAZ's proprietary information would cause significant and irreparable harm to the Company.

### COUNT I: BREACH OF CONTRACT

48. LAZ incorporates by reference each of the preceding paragraphs as if set forth fully herein.

49. The Agreement is a valid, binding, and enforceable written agreement.

50. The Agreement, which Starre executed as a condition to her employment with LAZ, was supported by consideration. The Agreement is reasonable in duration and scope and is designed to advance a legitimate interest of LAZ.

51. LAZ performed under the Agreement and satisfied all relevant obligations thereunder.

52. LAZ has legitimate interests in protecting its Proprietary Information by preventing Starre from violating the Agreement to LAZ's detriment.

53. The applicable restraints in the Agreement were and are reasonably necessary to protect LAZ's legitimate business interests and are no broader than necessary to effectuate that purpose.

54. Starre violated the Agreement in numerous ways, including but not limited to: direct disclosure of Proprietary Information to third-party electronic repositories without written permission from the Company; and failure to use best efforts to protect the Proprietary Information from unauthorized disclosure.

55. Starre is in breach of the Agreement due to at least her: misappropriation of LAZ's Proprietary Information; failure to return Company property; storing LAZ Proprietary Information on unauthorized third-party devices; and failing to protect LAZ's Proprietary Information and trade secrets.

56. If Starre's unlawful conduct is permitted to continue, LAZ will suffer substantial and irreparable injury to its business, including, without limitation, loss of business, profits, competitive business advantage, opportunity, and/or expectancy, and its competitors will obtain an unfair advantage in the marketplace.

57. LAZ has no adequate remedy at law and is therefore entitled to an injunction to prevent Starre's further misappropriation of Proprietary Information.

58. As a direct and proximate result of Starre's conduct described herein, LAZ has sustained and will continue to sustain actual and/or consequential damages, in an amount to be determined at trial.

## COUNT II: VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, *et seq.*

59. LAZ incorporates by reference each of the preceding paragraphs as if set forth fully herein.

60. As a result of her employment with LAZ, Starre was provided access and acknowledged her access to LAZ's Proprietary Information, including but not limited to trade secrets involving financial, business, employee, customer, and strategic information. This information was kept secret and is not generally known or reasonably ascertainable by proper means. LAZ has taken appropriate measures, reasonable under the circumstances, to safeguard its Proprietary Information. This includes requiring employees, including Starre, to sign agreements agreeing to protect LAZ's Proprietary Information. The information has independent economic value to LAZ from not being known, as it is used in connection with LAZ's business and enables it to compete across the country. The Proprietary Information constitutes "trade secrets," within the meaning of the definition of that term in the Defend Trade Secrets Act, 18 U.S.C. § 1839(3).

61. Starre was subject to the Agreement, which requires her to maintain the confidentiality of the Proprietary Information. Starre acknowledged the value of the information and her professional obligation to protect and maintain its confidentiality, yet violated her confidentiality obligations to LAZ and shows no signs of doing otherwise in the future, as she has in her possession LAZ's Proprietary Information and has repeatedly refused to cooperate with LAZ since her departure from the Company. Starre's actions, as set forth herein, constitute misappropriation under the Defend Trade Secrets Act, 18 U.S.C. 1836.

62. Starre's misappropriation of the information was "improper," within the meaning of 18 U.S.C. § 1839(6), because she had no lawful right to retain the Proprietary Information, to remove the information from LAZ, and to refuse to return all copies, thus breaching her duty to maintain the secrecy of the information, all of which constituted a violation of the Agreement.

63. Starre's continued possession and use of the Proprietary Information were and continue to be without LAZ's consent, and Starre used improper means to acquire the information by accessing it and retaining it personally.

64. Starre knew or had reason to know that her acquisition, possession, and use of the Proprietary Information for her use during and after she left LAZ were wrongful and without LAZ's consent.

65. Starre's conduct constitutes knowing, willful, and malicious misappropriation. Upon information and belief, Starre will use and/or disclose LAZ's Proprietary Information for her own benefit and advantage or for that of a new employer, potentially a direct competitor of LAZ.

66. As a direct and proximate result of Starre's wrongful conduct, LAZ has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Starre will cause further irreparable injury to LAZ. LAZ has also suffered direct and consequential damages, and is entitled to recover compensatory damages, attorneys' fees, and other damages in an amount to be proven at trial.

### COUNT III: VIOLATION OF THE VIRGINIA TRADE SECRETS ACT, VA. CODE. ANN. § 59.01-336 TO 59.1-343, *et seq*.

67. LAZ incorporates by reference each of the preceding paragraphs as if set forth fully herein.

68. The Virginia Uniform Trade Secrets Act ("VUTSA") prohibits any misappropriation of an owner's trade secrets.

69. The VUTSA broadly defines a trade secret as any information that derives independent economic value from not being generally known to and not being readily ascertainable by proper means and is subject to reasonable efforts at maintaining such information's secrecy.

70. LAZ owns its Proprietary Information (which include trade secrets). LAZ entrusted Starre with this Proprietary Information, including but not limited to, financial, business, employee, customer, training, and strategic information that constitute trade secrets.

71. LAZ has taken appropriate measures, reasonable under the circumstances, to maintain the secrecy of its Proprietary Information, which derives independent economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure and not being readily ascertainable by proper means.

72. The Proprietary Information constitutes trade secrets under Virginia law.

73. LAZ has undertaken reasonable measures to safeguard its Proprietary Information by requiring employees, including Starre, to sign agreements like the Agreement agreeing to protect LAZ's Proprietary Information and adopting physical and electronic measures.

74. Upon information and belief, Starre has misappropriated, or her conduct constitutes a substantial threat that she will misappropriate, LAZ's Proprietary Information, as she has improperly acquired it and is at risk of disclosing and/or using it without LAZ's consent and to her own advantage or for that of a direct competitor.

75. Starre's conduct constitutes knowing, willful, and malicious misappropriation.

76. As a direct and proximate result of Starre's wrongful conduct, LAZ has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Starre will cause further irreparable injury to LAZ. LAZ has also suffered direct and consequential damages, and is entitled to recover compensatory damages, attorneys' fees, and other damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LAZ prays as follows:

(a) That the Court award injunctive relief, first in the manner of a preliminary injunction, and finally as a permanent injunction, ordering that Defendant Starre and any other person collaborating or acting in concert with her are:

  i. Restrained and enjoined from accessing, using, disclosing, sharing, or making available to any person or entity other than LAZ, any of LAZ's Proprietary Information;

  ii. Restrained and enjoined from altering, destroying, or disposing of any evidence including documents, communications, information, or other tangible or intangible things, in any form, relating to (i) LAZ, (ii) the claims asserted by LAZ in this action, or (iii) Starre's acquisition, use, transfer, or disposal of LAZ's Proprietary Information and/or property; and

  iii. Required to account for (through expedited discovery) and return to LAZ any and all of LAZ's property, including its Proprietary Information, wherever it resides or is stored, and with a full accounting to as to whom any such property has been disseminated.

(b) That the Court award Judgment against Starre for breach of the Agreement;

(c) That the Court award judgment against Ms. Starre for violation of the Defend Trade Secrets Act and violation of the Virginia Uniform Trade Secrets Act;

(d) That the Court award actual, incidental, compensatory, and consequential damages for Starre's breaches of contract and violation of the Defend Trade Secrets Act and the Virginia United Trade Secrets Act, as well as an award of punitive and/or exemplary damages for violating the Defend Trade Secrets Act and the Virginia United Trade Secrets Act, in an amount to be proven at trial;

(e) That the Court award to LAZ its costs of suit together with reasonable attorneys' fees pursuant to the Agreement;

(f) That the Court grant such other, further, and additional relief as the Court deems just and proper.

Dated this 19th day of November, 2025.              Respectfully submitted,

*/s/ John A. Burlingame*
John A. Burlingame (VA Bar No. 32694)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
john.burlingame@squirepb.com

Steven M. Auvil (*application pro hac vice forthcoming*)
E. Joseph D'Andrea (*application pro hac vice forthcoming*)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Phone: +1 614 365 2700
Fax: +1 614 365 2499
steven.auvil@squirepb.com
joseph.dandrea@squirepb.com

*Attorneys For LAZ KARP Associates, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on the 19th day of November, 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system. I will then send the document and a notification of such filing (NEF) to the following party by mail and by leaving a copy with someone of suitable age and discretion who resides at the following address:

Anilise Starre
5911 Edsall Road
Apt 507
Alexandria, VA 22304

*/s/ John A. Burlingame*
John A. Burlingame (VA Bar No. 32694)
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
john.burlingame@squirepb.com

Steven M. Auvil (*application pro hac vice forthcoming*)
E. Joseph D'Andrea (*application pro hac vice forthcoming*)
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Phone: +1 614 365 2700
Fax: +1 614 365 2499
steven.auvil@squirepb.com
joseph.dandrea@squirepb.com

*Attorneys For LAZ KARP Associates, LLC*