# EXHIBIT D



Squire Patton Boggs (US) LLP
2000 Huntington Center
41 S. High. St.
Columbus, Ohio  43215

Joe D'Andrea
T   +1 614 365 2786
joseph.dandrea@squirepb.com

November 14, 2025

**BY E-MAIL**

Anilise Starre
P.O. Box 4126
Alexandria, VA 22303

5911 Edsall Road
Apt 507
Alexandria, VA 22304
anilisestarre@gmail.com

**Re:** **Return of Company Property & Cease and Desist Misappropriation of LAZ's Confidential Information and Trade Secrets**

Dear Ms. Starre:

LAZ Parking ("LAZ" or the "Company") has retained our firm to institute legal proceedings against you if you do not immediately comply with the instructions in this letter. The Company has already sent you two letters regarding your return of Company's Confidential Information (*see* attached as Exs. A-B).  These were sent because the Company discovered that *you sent over 90 emails containing LAZ's confidential information and trade secrets (together, "Confidential Information") to your personal email account (anilisestarre@gmail.com) between October 8th and your termination on November 4th*. You have not responded to those letters.  We also learned that you retained your Company cell phone and have reason to believe you attempted to use it to download additional information after your employment ended.

A sample of some of the emails you sent to your personal email account are listed below:

| Date | Time (EST) | Subject Line | Attachment(s) |
|---|---|---|---|
| 10/10/25 | 6:17 PM | FW: Salary to CEC – 2025 and 2026 | |
| 10/10/25 | 6:18 PM | FW: CEC Tech Rebills | |
| 10/10/25 | 7:00 PM | FW: 2026 Budget Review Region Checklist | |
| 10/10/25 | 7:02 PM | FW: Important Budget Update | |
| 10/10/25 | 7:03 PM | FW: Regional Accounting budget | |
| 10/10/25 | 7:04 PM | FW: Bi-Weekly Budget Process Update | |
| 10/10/25 | 7:05 PM | FW: Managed Budgets | |
| 10/10/25 | 7:06 PM | FW: Home Office Cost Allocations – 2026 Budget | image001.jpg, Home Office Cost Allocations 2026BUD.pdf |

Squire Patton Boggs (US) LLP

Anilise Starre
November 14, 2025

| Date | Time | Subject | Attachment |
|---|---|---|---|
| 10/10/25 | 7:07 PM | FW: Location Budget Codes - CEC | CEC Location Budget Codes .xlsx |
| 10/10/25 | 7:09 PM | FW: 2026 Managed Budget Template Testing | Budget Template Review.docx |
| 10/10/25 | 7:10 PM | FW: Location Budget assignments | |
| 10/10/25 | 7:11 PM | FW: Power BI update needed | |
| 10/21/25 | 3:19 PM | Fw: Mid Atlantic Budget | RE_ Shuttle Insurance .eml, Shuttle Insurance .eml |
| 10/24/25 | 12:26 PM | FW: Regional G&A – September 2025 (2025 RQ3 update) | |
| 11/4/25 | 9:05 AM | Fw: Budget Progres and Extension (Pennsylvania/Delaware Region) | image002 (1).png, image001 (1).png |
| 11/4/25 | 12:08 PM | Fw: August Closing Action Items / Summary – Mid-Atlantic | Mid-Atlantic AvB August 2025 (09.26.25).xlsx |
| 11/4/25 | 12:28 PM | Fw: CRS Scorecard Metrics – August 2025 | CRS Scorecard Analytics – 08.2025.pdf |

These emails include Confidential Information, including business plans, financial records, and other confidential business documents.

Your actions clearly violate the obligations set forth in the Employee Handbook and in the Confidentiality and Non-Solicitation Agreement you signed on March 9, 2022 (the "Agreement", attached at Ex. C). Both of those documents clearly prohibit you from using or disclosing any such information except as needed for the performance of your job duties for the Company, and both documents further prohibit you from possessing the Company's Confidential Information after your employment ends. Your actions are also in violation of 18 U.S.C. § 1836 *et seq.*, the Federal Defend Trade Secrets Act of 2016 ("DTSA").

**Accordingly, LAZ hereby demands that you:**

1. **Immediately cease and desist any use of LAZ's Confidential Information;**

2. **Not send any of LAZ's Confidential Information to any third party. If you have already sent or shared any LAZ Confidential Information to a third party, identify each person and/or entity with whom you sent or shared it;**

3. **Retain all devices, accounts, storage media, and documents that contain or may contain LAZ's Confidential Information. In other words, do not delete, alter, destroy, or otherwise modify such information or any devices on which it is stored; and**

4. **Contact us immediately so that we can arrange for the return of the cell phone and the safe handling of LAZ's Confidential Information.**

We expect your full and immediate compliance with these obligations. Please contact me immediately to arrange for your compliance with the above-mentioned obligations. If we do not hear from you by **MONDAY NOVEMBER 17, 2025**, we will institute legal proceedings against you.

2

Squire Patton Boggs (US) LLP

Anilise Starre
November 14, 2025

Sincerely,

Squire Patton Boggs (US) LLP

Joe D'Andrea

Encl.

3



One Financial Plaza
14th Floor
Hartford, CT 06103
P: (860) 522.7641
F: (860) 524.8249
www.lazparking.com

Partners in Parking™

November 5, 2025

VIA:  anilisestarre@gmail.com

Anilise Starre
P.O. Box 4126
Alexandria, VA 22303

RE:   LAZ Parking Confidentiality Agreement

Dear Ms. Starre:

We are writing to remind you of your continuing obligations under the Confidentiality and Trade Secret Agreement set forth in the Employee Handbook as well as your Employment Agreement dated March 9, 2022.

During your employment, you had access to and worked with confidential and proprietary information, including business plans, proposals, financial records, revenue reports, and other materials that constitute LAZ's trade secrets. As outlined in the Employee Handbook and your signed agreements, you have a continuing legal and ethical obligation to protect this information and refrain from disclosing or using it for any purpose outside of LAZ's business.

It has come to our attention that you may have downloaded, retained, or disclosed company information in violation of your Employment Agreement and Confidentiality and Trade Secret obligations. Such conduct constitutes a serious breach of the agreements you signed and may also violate applicable laws governing the protection of trade secrets and proprietary business information.

LAZ takes these obligations extremely seriously. You are hereby directed to:

- Cease and desist immediately from any further use, disclosure, or retention of LAZ's confidential or proprietary information;
- Return or certify destruction of all LAZ materials, documents, or data in your possession, whether in physical or electronic form.

Please be advised that LAZ Parking does not desire to commence legal proceeding against you. However, in the event that you do not immediately cease and desist your actions in violation of the Agreements, we will have no other viable alternative.

I trust that this matter will have your immediate attention.

Sincerely,

Nicholas Unkovic

Exhibit A



November 7, 2025

VIA: anilisestarre@gmail.com

Anilise Starre
P.O. Box 4126
Alexandria, VA 22303

and

5911 Edsall Road
Apt 507
Alexandria, VA 22304

RE: LAZ Parking Confidentiality Agreement

Dear Ms. Starre:

This is your second and final notice regarding the breach of your confidentiality agreements you signed.   Our previous letter has gone unanswered.

You are legally bound by these agreements not to share or download confidential information.

If we do not hear from you within forty-eight (48) hours, we will have no alternative but to immediately pursue all available legal remedies and injunctive relief to stop you from sharing any information and to recover damages.

Sincerely,

Nicholas Unkovic
General Counsel

Exhibit B



# CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

I, the undersigned Employee, as a condition of my employment and in consideration of the continuation of my employment with LAZ KARP ASSOCIATES, LLC, its subsidiaries, affiliates, successors or assigns (together the "Company") and for all other valuable consideration, receipt of which is hereby acknowledged, agree to the following terms:

**1.   CONFIDENTIALITY AS A CONDITION OF EMPLOYMENT**

   a.   I have access to information pertaining to the Company's business that is of a confidential and secret character and of great value to the Company. I acknowledge that this "Proprietary Information" includes, but is not limited to, the following: customer lists; names of contact persons; customer records; trade secrets; business plans; methods of operation; marketing, pricing, and financial information pertaining to the business of the Company, and all other information now in existence or later developed which is similar to the foregoing; and all information which is marked as confidential or explained to be confidential.

   b.   I recognize the importance of preserving the confidentiality of the Proprietary Information and agree to use my best efforts to protect the Proprietary Information from unauthorized disclosure.

   c.   I agree to protect the Company's interest in the Proprietary Information and promise not to disclose, directly or indirectly, to any third parties any such matters or documents regardless of format or media upon which it is recorded, including any electronic or computer files, that contain such confidential information without written permission from the owner of the Company or otherwise in the normal course of my duties for the Company.

   d.   I agree not to disclose, at any time, the Company's Proprietary Information and any other information acquired by me concerning the Company's business, to the extent it is not available to the public.

   e.   I further recognize that the Company has received and in the future will receive from third parties their confidential or Proprietary Information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  I agree to hold all such confidential or Proprietary Information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

**2.   EMPLOYEE'S ACCOUNTS, GOODWILL ESTABLISHED AND WORK PRODUCT SHALL BE THE PROPERTY OF THE COMPANY**

I agree that all goodwill in the customers and accounts I establish or service, the Company documents prepared by me, work product involving Proprietary Information that I collect, customer records and other matters of a similar business nature, prepared by me or at my direction during the period of my employment, which relate to the business of the Company or to its demonstrably anticipated business shall be the sole and exclusive property of the Company and shall remain such after the termination of my employment, whether now existing or hereafter acquired by the Company.

Initial  *AS*

3. **NON-SOLICITATION OF CUSTOMERS**

    a.    While I provide my services to the Company and for the period of two (2) years following the termination/separation of my employment, for any reason, I will not, using Proprietary Information, either directly or indirectly, either for myself or for any person, firm, company corporation, call upon, solicit, divert, or take away, or attempt to solicit, divert, or take away any of the customers of the Company.

    b.    For the purpose of this Agreement, the term "customer" means any person, business or entity, or any person, business, or entity subject to the control of any such person, business or entity, that during the 24 months immediately preceding termination of my employment with the Company:

        (i)    is a customer during my employment; or

        (ii)    was a customer of the Company at the time of the termination of my employment with the Company; or

        (iii)    became a customer of the Company within six (6) months after the termination of my employment with the Company if I was involved with the marketing efforts in respect to such customer prior to the termination of my employment with the Company.

4. **NON-SOLICITATION OF EMPLOYEES**

I agree that for a period of two (2) years immediately following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice, I will not, using Proprietary information, either directly or indirectly, solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or attempt to solicit, induce, recruit, or encourage employees of the Company to leave their employment, either for myself or for any other person or entity.

5. **REASONABLENESS OF OBLIGATIONS**

    a.    I confirm that the obligations in Paragraphs three (3) and four (4) of this Agreement are fair and reasonable given that, among other reasons:

        (i)    the sustained contact I had and may have with the customers of the Company will expose me to confidential information regarding the particular requirements of these customers and the Company's unique methods of satisfying the needs of these customers, all of which I agree not to act upon to the detriment of the Company; and/or

        (ii)    I will be performing important development work on the products developed, marketed, sold or licensed by the Company and/or on the services provided by the Company.

    b.    Therefore, I agree that the obligations in Paragraphs three (3) and four (4) of this Agreement together with my other obligations under this Agreement are reasonably necessary for the protection of the Company's proprietary interests. I also agree that the obligations in Paragraphs three (3) and four (4) of this Agreement are in addition to the non-disclosure and other obligations provided elsewhere in this Agreement. I further acknowledge that the fulfillment or enforcement of my obligations contained in this Agreement will not preclude me from becoming gainfully employed in the position for which I was hired by Company either prior to, concurrent with or following termination of my employment given my general knowledge and experience in such industry.

Initial _AS_

**7.      NO EMPLOYMENT CONTRACT**

I acknowledge that this Agreement does not create an employment contract, but rather is one of the conditions of my **employment at-will** with the Company. Accordingly, I acknowledge and agree that either the Company or I may terminate my employment with the Company at any time for any reason not expressly prohibited by law.

**8.      ENFORCEMENT**

a.      I acknowledge that the continued operations of the Company's business requires strict compliance with the confidentiality provisions set forth herein, and recognize that in the event of a breach or threat of breach of this Agreement, monetary compensation would not be an adequate remedy or would be impossible to calculate. I agree, therefore, in the event or a breach on my part, or threat of a breach, of this Agreement, the Company shall be entitled to an immediate injunction or temporary restraining order without showing actual damages.

b.      I acknowledge that the remedies set forth herein are not exclusive and shall be in addition to any other remedy available to the Company at law or in equity.

**9.      GENERAL PROVISIONS**

a.      This Agreement supersedes all prior agreements, written or oral, between the Company and me relating to the subject matter of this Agreement. This Agreement may not be modified, changed or discharged in whole or in part, except by an Agreement in writing signed by the Company and me. I agree that any change or changes in my duties, salary or compensation after the signing of this Agreement shall not affect the validity or scope of this Agreement.

b.      This Agreement will be binding upon my heirs, assigns, executors and administrators and will inure to the benefit of the Company and its successors and assigns.

c.      No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

d.      I expressly consent to be bound by the provisions of this Agreement for the benefit of the Company or any subsidiary or affiliate thereof to whose employ I may be transferred without the necessity that this Agreement be re-signed at the time of such transfer.

e.      This Agreement is governed by and will be construed as a sealed instrument under and in accordance with applicable state laws.

f.      If any provision or clause of this Agreement, or portion thereof, shall be held by any court or other tribunal of competent jurisdiction to be illegal, valid, or unenforceable in such jurisdiction, the remainder of such provision shall not thereby be affected and shall be given full effect, without regard to the invalid portion.

**I HAVE READ ALL OF THE PROVISIONS OF THIS AGREEMENT AND I UNDERSTAND AND AGREE TO EACH OF THESE PROVISIONS.**

_____        03/12/2022
*JobviteSigned by [signature]*
2022-03-12, b1d4c55e-5a46-45ec-9ba3-3a9b0c0c17ce        _____
Employee                                                Date